NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

ROSEMARIE LISANTI, et al.,

                Appellants,              CIVIL NO. 06-3009 (GEB)

    v.

JAY L. LUBETKIN,

                               **MEMORANDUM OPINION**

                Appellee.

**BROWN, Chief District Judge**

      This matter comes before the Court upon Appellants Rosemarie Lisanti, Joseph Lisanti, Texas Trucking Corp., New Jersey Trucking Corp. and Arizona Freight Haulers, Inc. (hereinafter "Appellants" or "Debtors") appeal of United States Bankruptcy Judge Novalyn L. Winfield's March 10, 2006 Order Respecting Termination of 401K Pension Plan.  The action was reassigned to the undersigned on June 15, 2007, and the Court, having read and fully considered all of the parties' submissions, has decided this matter without oral argument pursuant to Fed. R. Civ. P. 78.   For the reasons discussed in this Memorandum Opinion, the underlying Order of the Bankruptcy Court dated March 10, 2006 is affirmed.

I.        **BACKGROUND**

      Debtors conducted the business of the wholesale distribution of Italian specialty foods and food related products to food retailers and restaurants.  (Appellants' Brief, p. 3).  Appellant Joseph M. Lisanti is the former President of the Debtors, and both he and Appellant Rosemarie Lisanti (Joseph Lisanti's sister) are the sole officers, shareholders and members of each of the

non-individual Appellants.  Appellants Texas Trucking Corp., JL Trucking LLC, New Jersey Trucking Corp. and Arizona Freight Haulers, Inc. had owned or leased trucks and trailers which had been used by the Debtors in connection with their operations.  (*Id.*).

In November, 1972, Lisanti Foods, Inc. established an ERISA retirement plan pursuant to Title 28, United States Code, Section 401(k) which included employees of Lisanti Foods, Inc. and six affiliated companies (hereinafter "Initial 401(k) Plan").  (*Id.* at p. 5).  Lisanti Foods was the administrator of the Initial 401(k) Plan.  Appellant Texas Trucking Corp. was an affiliated participating employer under the Initial 401(k) Plan, and Appellants Joseph and Rosemarie Lisanti served as the plans trustees.  (*Id.*).

On November 20, 2002, each of the Debtors filed a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Bankruptcy Code.  (*Id.* at p. 3).  On November 21, 2002, an Order was entered consolidating the Debtors' cases for administrative purposes. ( *Id.* at p. 4).  Thereafter, the Debtors converted their original reorganization efforts under Chapter 11 to a liquidation of their assets, which was approved by the Bankruptcy Court on January 21, 2003. (*Id.*).  On January 30, 2003, Appellee Jay L. Lubetkin (hereinafter "Appellee" or "Trustee") was appointed as Chapter 11 Trustee.  (*Id.*).

On March 27, 2003, the Trustee hired Pro-Plans, Inc., otherwise known as Professional Retirement Planners (hereinafter "PRP"), to assist in the termination of the Initial 401(k) Plan. (*Id.* at p. 6).  At the time PRP was hired, all benefits under the Initial 401(k) Plan had vested and the remaining task to be completed was to distribute the vested funds.  (*Id.*).

On April 17, 2003, the Trustee and PRP executed an Adoption Agreement which resulted in the creation of a new 401(k) plan (hereinafter "New 401(k) Plan" or "Plan").  The New 401(k)

Plan provides that the Trustee shall have the power and discretion to construe the terms of the Plan and resolve all questions regarding its interpretation and administration. (Appellants' Appendix Ex. A). The Plan also provides that the Trustee may appoint specialists and advisers as deemed necessary, as well as allowing the Trustee to compensate any specialists or advisers employed from said Plan's assets. (*Id.*).

Thereafter, the Trustee and PRP obtained and executed the necessary documentation to terminate the Plan. PRP distributed owed funds to a majority of the Plan participants, notwithstanding a number of participants who could not be located. (Appellee's Opposition, p. 7).

On August 17, 2005, the Plan Fiduciaries filed a motion seeking to have the Bankruptcy Court order the Trustee to complete the termination of the Plan. (Bankruptcy Docket). On September 12, 2005, the Trustee filed a cross-motion seeking to have the Bankruptcy Court compel Rosemarie Lisanti to direct PRP to pay termination costs from the Plan's assets. (*Id.*).

On January 25, 2006, the Bankruptcy Court conducted a hearing regarding the aforementioned motion and cross-motion, and determined that the costs associated with the termination constituted administration expenses under the Plan. (*Id.*). On March 10, 2006, the Bankruptcy Court issued an Order embodying its findings. The Order provided, in sum and substance: (1) that the Trustee may charge assets of the Plan with any expenses associated with its termination; (2) that the Trustee may allocate the expenses to each Plan participant's account on a pro rata basis; and (3) that the Trustee may attempt to recover the pro rata share of expenses from Plan participants who have already received their distributions under the Plan. (March 10, 2006 Order).

On March 20, 2006, Appellants filed the instant appeal.

## II.   DISCUSSION

### A.   <u>Standard of Review</u>

Bankruptcy Rule 8013 provides, in pertinent part: "On appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings.  Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses."  "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conclusion that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).  A bankruptcy court's conclusions of law, on the other hand, are subject to plenary review.  *See Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 84 (3d Cir. 1988).  Where mixed questions of law and fact are presented, the appropriate standard must be applied to each component of the appeal. *See In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir. 1989).  Here, the facts are undisputed.  The question before this Court is a question of law, and as such, the Bankruptcy Court's March 10, 2006 Order shall be confined to plenary review.

### B.   <u>The Bankruptcy Court did not Err in Allowing the Trustee to Charge Assets of the Plan with Expenses Associated with its Termination</u>

There are two methods in which the costs associated with the termination of a 401(k) plan can be paid during the course of a bankruptcy.  First, the appointed trustee can charge the costs to the bankruptcy estate.  In the alternative, the trustee could seek to obtain the monies from the assets of the retirement plan, a non-estate property.  The terms of the retirement plan, federal

statutes governing the plan and the common law of trusts provide a basis for a determination in either favor. *See* 26-MAR, AMBKRIJ 24 (March, 2007).

> **i.      Terms of the Retirement Plan**

First for consideration is whether the terms of the plan expressly authorize the trustee to compensate specialists from the assets of the plan.  In *In re B.B. Walker Co.*, a 401(k) plan administrator entrusted by two debtor employers with terminating their 401(k) plans sought reimbursement from the debtors' bankruptcy estates for professional fees incurred in connection with the termination.  *See* 2002 WL 31770849 at *1 (Bankr. M.D.N.C. Nov. 25, 2002).  In rejecting the argument that the debtors' bankruptcy estates had an obligation to pay the fees, the court noted that although the debtors had apparently paid most of the plan administrative fees prior to bankruptcy, the plans did not obligate the debtors to make these payments.  *Id.* at * 2. Rather, the court noted, the plans expressly provided that expenses related to the performance of the plan trustee's duties or the administration of the plans shall be paid by the plans unless paid by the employer.  *Id.*  Thus, the court concluded that this language did not impose any contractual duty or obligation upon the debtors.  It further concluded that the debtor's voluntary payment of plan expenses did not override the language of the plans and create a legal obligation on the part of the debtors to pay expenses incurred by the plan trustee.  *Id.*; 26-MAR, AMBKRIJ 24 (March, 2007).

In *In Re Carolina Premier Med. Group P.A.*, 2003 WL 1751257 at *1 (Bankr. M.D.N.C. Mar 31, 2003), a bankruptcy trustee sought to pay special counsel retained by the debtor to provide legal advice and representation with respect to termination of a 401(k) plan.  The court held that the fees should be paid from the plan's forfeitures or trust fund and not as costs of

administration of the debtor's estate.  While the plan did provide that the employer may pay such costs, the court observed, it was determined that the trust fund bore the ultimate responsibility for payment of the costs of administration.  *Id.*; 26-MAR, AMBKRIJ 24 (March, 2007).

Indeed, courts have frequently held that general administration costs, such as attorney's fees, are to be born by the plans' assets.  *See Engelhart v. Consolidated Rail Corp.*, 1996 WL 526726 at *11 (E.D.Pa. Sept. 19, 1996); *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Plan and Trust Agreement*, 822 F.Supp. 247, 263-64 (E.D. Pa. 1993).  Further, in other cases in which the applicable plan obligated the employer to pay administration costs, courts have ruled to the contrary.  *See e.g. DelGrosso v. Spany & Co.*, 776 F.Supp. 1065, 1070 (W.D.Pa. 1991), *aff'd* 968 F.2d 12 (3d Cir. 1992); *In Re Gulf Litig.*, 764 F.Supp. 1149, 1207 (S.D.Tex. 1991).

Reasonable expenses of administering a plan include direct expenses properly and actually incurred by a fiduciary in the performance of such fiduciary's duties to the plan.  *See In Re B.B. Walker Co.*, 2002 WL 31770849 at *3 (Bankr. M.D.N.C. Nov. 25, 2002).  Here, the fees and expenses in question were incurred by the Trustee in carrying out his duties as trustee and such expenses were incurred in order that distributions could be made to the beneficiaries of the plans and thus benefitted the beneficiaries.  Language in the Plan itself provided the Trustee with not only the authority to address the administration and termination of the Plan, but also the authority to address the costs of the administration and termination of the Plan.  Therefore, the expenses paid were expenses incurred in the administration of the Plan and were properly payable from the Plan.

ii.    **ERISA**

Under § 403(c)(1) of ERISA (29 U.S.C. § 1103(c)(1)), "the assets of a plan shall never

inure to the benefit of any employer and shall be held for the exclusive purposes of providing

benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of

administration."

Reasonable expenses have been held to include direct expenses properly and actually

incurred by a fiduciary in the performance of duties to the plan such as those performed by a

bankruptcy trustee as plan administrator, and that services required to actually implement an

employer's decision to terminate a plan qualify generally as fiduciary in nature.  *In Re Carolina*

*Premier Med. Group P.A.*, 2003 WL 1751257 at *3 (Bankr. M.D.N.C. Mar 31, 2003) (holding

that the majority of the fees and expenses incurred by the trustee's special counsel constituted

costs related to administering the 401(k) plan pursuant to § 1103(c)(1)).  *See also Walker* at *3

(holding that the 401(k) plan administrator had incurred fees and expenses in connection with

termination of the debtors' 401(k) plans in order to make distributions to the beneficiaries of the

plans and that said fees and expenses benefitted the beneficiaries and warranted payment from

the plans pursuant to § 1103(c)(1)).

Absent the statutory language of § 1103(c)(1), there are two additional sections under

ERISA that support a finding that a plans assets should bear the cost of termination.  Specifically,

§ 1108(c) provides that a fiduciary under a retirement plan "may receive any reasonable

compensation for services rendered, or for the reimbursement of expenses properly and actually

incurred, in the performance of his duties with the plan."   § 1104(a)(1)(A)(ii) provides that "a

fiduciary [under a retirement plan] shall discharge his duties with respect to a plan solely in the

interest of the participants and beneficiaries and for the exclusive purpose of defraying reasonable expenses of administering the plan."

Assuming *arguendo* that no language in the Plan itself permitted the costs of the termination of the Plan to be born by the Plan's assets, ERISA independently provides ample support for such a holding by the Bankruptcy Court.

### iii.    Common Law of Trusts

Next, and despite Appellants' protestations, the common law of trusts does indeed provide the underpinning's of ERISA, and as such, provides an independent basis for permitting costs incurred in the termination of a retirement plan to be paid by the plan's assets.

When enacting ERISA, Congress intentionally invoked the common law of trusts to define the trustee's general duties and responsibilities. *IAM Stock Ownership Inv. Trust Fund v. Eastern Air Lines Inc.*, 639 F.Supp. 1027, 1034 (D.Del. 1986).  In *IAM*, the court, in reliance of the common law of trusts, held that a trust fund could pay for expenses incurred in connection with operation and administration of the trust.  *See also* Restatement (Second) of Trusts § 188 (1959) ( . . . "[a] trustee can properly incur expenses which are necessary or appropriate to carry out the purposes of the trust and are not forbidden by the terms of the trust, and such other expenses as are authorized by the terms of the trust."

Ultimately, any of the above-referenced basis, either individually or cumulatively, would support the Bankruptcy Court's March 10, 2006 ruling.  Conversely, there is no body of law that disallows such a holding.  The Bankruptcy Court's determination that the termination costs of the Plan be satisfied utilizing the assets of said Plan was therefore appropriate under the law.  The Bankruptcy Court is affirmed.

### C.      **Remaining Issues Raised by Appellants**

_____Appellants raise additional questions regarding the March 10, 2006 Bankruptcy Court Order.  Specifically, Appellants additionally assert: (1) that the Bankruptcy Court erred in permitting the Trustee to obtain pro rata shares of the termination costs from Plan participants who had already received their share of the funds; (2) that the Bankruptcy Court erred in permitting the Trustee to sue vested participants in the Initial 401(k) Plan who had already received their distributions to recover the amounts they received and apply the same to the administrative expenses of the New 401(k) Plan; and (3) that the Bankruptcy Court erred in precluding further distributions of vested monies from the New 401(k) Plan until the Trustee unilaterally assessed the expenses of administering the Debtors' New 401(k) Plan against the Initial 401(k) Plan assets.

The majority of the March 10, 2006 Bankruptcy Court Order, as well as the majority of both parties briefs are dedicated to the issue of who should bear the costs of terminating the Plan. The remaining issues Appellants present are merely byproducts of the resulting determination by the Bankruptcy Court that the costs are to be born by the Plan's assets.  Again, there is nothing in the law that prevents any of the remaining determinations of the Bankruptcy Court, and Appellants fail to so show.  Further, the remaining issues appear to be reasonable determinations guiding the Trustee on how to execute the Bankruptcy Court's ruling that the costs be paid by pro rata value.  Without more, the Bankruptcy Court's determinations in these regards must be affirmed.

## III.  CONCLUSION

For the reasons discussed above, the Bankruptcy Court's March 10, 2006 Order Respecting Termination of 401K Pension Plan is affirmed in all respects.  An appropriate form of order is filed herewith.


s/Garrett E. Brown, Jr.
**HONORABLE GARRETT E. BROWN, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**